BOUTALL, Judge.
This appeal arises from a judgment of the trial court denying the plaintiffs’ request for a permanent injunction seeking to enjoin the defendant newspaper company from acting as the official journal for St. Charles Parish.
*261 On June 2, 1980, the St. Charles Parish Council, by Resolution #2072, selected the River Parishes Guide (hereinafter referred to as Guide) as its official journal for a period of one year. Following this action by the Council the plaintiffs Henry E. Yoes, Jr. and the St. Charles Herald (hereinafter referred to as Herald) filed suit against the Council for an injunction to enjoin it from allowing the Guide to act as the official journal of the parish. A temporary restraining order was issued. The St. Charles Parish Council filed an exception of no cause of action. Allen Lottinger and Guide filed a petition for intervention requesting that the temporary restraining order be dissolved and that they be awarded damages from the plaintiffs for the improper issuance of said order.
The matter was apparently heard on the merits of the claim. The trial court dissolved the temporary restraining order, denied the plaintiffs’ request for a preliminary or permanent injunction, and dismissed the plaintiffs’ suit, dismissing also the intervenor’s request for damages. From this judgment the plaintiffs have appealed devolutively.
On appeal there are two basic issues before us: 1.) Whether the St. Charles Parish Council is subject to state law in its efforts to select an official journal. 2.) Whether the River Parishes Guide satisfies the qualifications necessary for selection as an official journal for St. Charles Parish.
I
In approaching the first issue a review of the Home Rule Charter adopted by St. Charles Parish in December of 1977 must be considered in light of the 1974 Louisiana Constitution. Article I of the St. Charles Parish Home Rule Charter indicates that the local government is subject to the authority of the 1974 Louisiana Constitution. This article states: “St. Charles Parish is a local governmental subdivision as defined by Art. Ill § 44 of the La. Constitution of 1974. The Parish shall operate under this home rule charter under authority of Article VI, Section 5 of the constitution.” Under Article VI § 5(E) of the 1974 La. Constitution a home rule charter is permitted to provide for the structure, and organization, powers and functions of the local government. However, this subsection also reveals that the powers and functions of local government are subject to state law and the La. Constitution. This article states:
“(E) Structure and Organizations; Powers; Functions.
“A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.”
The parties have strenuously argued to us that the selection of an official journal comes either within the structure and organization of government, or within the powers and functions of government. The first theory would lead to a conclusion that selection of the journal is solely under parochial dominion, and the second would lead to a conclusion that the state law may apply. Indeed, we must note that the trial judge rendered lengthy reasons for judgment, and rendered a very scholarly and enlightening discourse on the constitutional grant of broader powers to state government.
However, we do not consider that issue to be decisive of the questions raised here. Instead, we conclude that the selection of an official journal comes within the police power of the state and comes within the limitations of local governmental subdivisions as set out in the 1974 Constitution, Article 6 § 9(B): “Police Power Not Abridged. Notwithstanding any provision of this Article, the police power of the state shall never be abridged.”
Police power is a power inherent in every sovereignty to govern men and things, and thereunder the legislature may, within constitutional limits, prescribe regu *262 lations for promotion of public health, safety, morals and general welfare. It is, of course, important, indeed necessary, to our democratic form of government that the people shall be informed of the various activities of their government in order to not only be made aware of those ordinances which may affect the daily life or business of the individual, but also to be aware of the inner functions of government in order to form a basis for judging the efficiency and integrity of local government. To aid the acquisition of such knowledge it is equally important to require the information be made readily available and readily accessible. The state has a legitimate role in passing legislation to provide its citizens with the means of acquiring such knowledge under the exercise of its police powers.
To this end a series of such laws have been enacted and published as Title 43 of the Louisiana Revised Statutes. Chapter 2 provides for an official journal of the state and its departments, while Chapter 4 provides for the official journal of parishes, municipalities, and school boards, as well as official journals of other political subdivisions. Of direct concern in this case are R.S. 43:141, 142 and 143. They provide in pertinent part as follows:
“§ 141. Official journal to be selected by police juries, municipal corporations and school board
“The police juries, municipal corporations and school boards in all the parishes, the parish of Orleans excepted, at their first meeting in June each year, shall select an official journal for their respective parishes, towns or cities, for a term not exceeding one year.”

“§ 142. Qualifications of newspaper
“The newspaper shall have been published in an office physically located in the parish in which the body is located for a period of five years preceding the selection, shall not have missed during that period as many as three consecutive issues unless caused by fire, flood, strike or natural disaster, must have maintained a general paid circulation in the parish in which the body is located for five years, and shall have been entered in a U. S. post office in that parish under a second class mailing permit in that parish for a period of five consecutive years prior to the selection.
“The provisions of this section relating to the five-year requirement shall not contravene any contract existing between any governing body and a newspaper on and prior to May 11, 1970; nor shall the five year requirement herein be applied in assessing the qualifications of a newspaper which was in existence on May 11, 1970.”
“§ 143. Newspaper selected to be known as official journal; duties
“The newspaper selected shall be known as the official journal of the parish, town, city or school board, and it shall publish all minutes, ordinances, resolutions, budgets, and other official proceedings of the police jury, town or city councils, or the school board.”
While it may be argued that § 141 refers only to police juries and not to other forms of parochial government which may be created under a home rule charter, it is apparent that the term “police juries” is used synonymously with the term “governing authority” of the parish. This may be readily perceived from the statutory scheme of Title 43 as well as the provisions of § 143 which clear up some of the confusion which may result from § 141.
We conclude that the parish council of St. Charles Parish does not possess the authority under its Home Rule Charter to disregard the state law on selection of an official journal, and that it is required to follow the provisions of R.S. 43:141, et seq. It should be pointed out that the council has not adopted any specifications of its own for the qualification as an official journal, but has simply appointed by resolution the River Parishes Guide as its official journal. Accordingly, if the selection of the Guide fulfills the requirements of state law, then the police power of the state has not been abridged and the appointment is legal.
*263 This second issue revolves about the qualifications possessed by the River Parishes Guide. The requirements are set out in R.S. 43:143, quoted above. The trial judge made the following factual finding with which we agree:
“(1) the Guide was published and printed in St. Charles Parish on this date and since its very beginning in 1969,
“(2) they have been in existence over two years; it’s been in existence since 1969,
“(3) the editor of the newspaper testified they have never missed any issues, thus, they haven’t missed three consecutive issues,
“(4) he indicated that they became entitled to second class mailing privileges in May of 1979.”
The pertinent day of qualification is June 2, 1980 on which date the resolution appointing the Guide was passed. A comparison of the qualifications possessed by the Guide to those required by the statute shows that the Guide does indeed meet the requirements except for some of the requirements of five years imposed therein. However, the statute further provides that these five year requirements shall not be applied in assessing the qualifications of a newspaper which was in existence on May 11, 1970. The Guide was in existence prior to that time, hence we do not consider the five year periods to be applicable in this case.
A final argument is made that the Guide was not “a newspaper ” which was in existence on May 11,1970. We are referred to the definition of newspaper contained in R.S. 43:201. That statute does not refer to official journals, but refers to requirements of publications in which judicial and legal proceedings shall be published. The definition therein contained should be restricted only to those types of publications and not to the specific other requirements relating to official journals.
For the reasons hereinabove expressed, we conclude that the St. Charles Parish Council complied with the restrictions of state law in appointing the River Parishes Guide as its official journal for a period of one year, and accordingly we affirm the judgment appealed from.

AFFIRMED.